```
                 UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *   14-cr-73-02-PB
           v.                   *   September 9, 2015
                                *   11:50 a.m.
LAURA MINOT                     *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

| | |
|---|---|
| For the Government: | William Morse, AUSA<br>U.S. Attorney's Office<br>53 Pleasant Street<br>Concord, NH 03301 |
| For the Defendant: | Andrew Winters, Esq.<br>Cohen & Winters PLLC<br>101 North State Street<br>Suite 1<br>Concord, NH 03301 |
| Probation Officer: | Jennafer McNutt |
| Court Reporter: | Sandra L. Bailey, LCR, CM, CRR<br>Official Court Reporter<br>United States District Court<br>55 Pleasant Street<br>Concord, NH 03301<br>(603)225-1454 |

```
1                    BEFORE THE COURT
2            THE CLERK:  Court is in session and has for
3   consideration a sentencing in criminal matter
4   14-cr-73-02-PB, United States of America versus Laura
5   Minot.
6            THE COURT:  Ms. Minot, I have a presentence
7   report for you that was dated June 19th and revised on
8   August 25th.  Have you had a chance to read that report?
9            THE DEFENDANT:  Yes.
10           THE COURT:  Yes.  And have you had a chance to
11  talk to your lawyer about it?
12           THE DEFENDANT:  Yes.
13           THE COURT:  And you do feel you understand it?
14           THE DEFENDANT:  Yes.
15           THE COURT:  Okay.  Thank you.  You can be
16  seated.
17           Does the government dispute any of the facts
18  or legal conclusions contained in the report?
19           MR. MORSE:  No, your Honor.
20           THE COURT:  Counsel, are you pressing any
21  objections to the report?
22           MR. WINTERS:  No, your Honor.
23           THE COURT:  Okay.  So, in this case the
24  defendant's total offense level is eight, her Criminal
25  History Category I.  One of the offenses of which she is
```

1  convicted, aggravated identity theft, carries a
2  mandatory minimum sentence of two years consecutive to
3  any sentence imposed on the other counts, in this case
4  Count One, the conspiracy charge.  So the guideline
5  sentencing range is set by the -- is set by the --
6  affected by the mandatory minimum.  The lowest possible
7  sentence that can be given under this, for these crimes
8  is 24 months, correct?
9           MR. WINTERS:  That's correct, your Honor.
10          THE COURT:  And plus one day for the -- or I
11 guess you could give zero for the underlying conduct.
12 So the lowest sentence will be 24 months.
13          MR. MORSE:  That's correct, your Honor.
14          THE COURT:  Okay.  All right.  So I adopt the
15 findings of fact and conclusions of law set forth in the
16 report which will be made a part of the record under
17 seal and determine that the offense level is eight, her
18 Criminal History Category is I, and the guideline range
19 is set at 24 months because of the mandatory minimum
20 sentence.
21          All right, what's the government's
22 recommendation?
23          MR. MORSE:  Your Honor, this is a C plea to a
24 sentence of 25 months.
25          THE COURT:  Okay.

1    MR. MORSE: These are serious offenses as
2 reflected by Congress's enactment of the aggravated
3 identity theft statute which covers crimes of this
4 nature. This credit card problem is endemic. I'm sure
5 the Court has seen a lot of it. A 25-month sentence,
6 your Honor, would reflect the seriousness of the crime.
7    THE COURT: Yeah, let's just be clear, though,
8 I mean, for what she pled guilty to the lowest sentence
9 would be 24 months, so what you're saying is I
10 negotiated a deal with her that would be binding on both
11 of us and I agreed to accept a sentence one month higher
12 than the lowest sentence she could be sentenced to in
13 exchange for her guilty plea to these two charges.
14    MR. MORSE: That's correct, your Honor.
15    THE COURT: Okay. All right. Thank you.
16 Counsel, I'll hear you. You agree that you have a
17 binding plea agreement for a 25-month sentence?
18    MR. WINTERS: We do, your Honor, we think
19 that's appropriate given the mandatory minimum sentence
20 that she faces.
21    THE COURT: Well, it's almost the lowest
22 possible sentence she could be sentenced to, one month
23 longer than the lowest possible, so, given the fact
24 that, and I know this from having reviewed the
25 presentence report and having been involved in

```
 1   sentencing the co-defendant who received a much longer
 2   sentence, that the facts in this case are essentially,
 3   leave the defendant with virtually no defense to a
 4   charge if it went to trial, and since there's virtually
 5   no defense, this decision to plead guilty and accept
 6   this negotiated plea produces virtually the lowest
 7   possible sentence she could receive without any risk
 8   that she gets a higher sentence.
 9              MR. WINTERS:  That was exactly our reasoning
10   and we agree, your Honor, yes.
11              THE COURT:  All right.  Okay.
12              MR. WINTERS:  Your Honor, she brought this
13   today, so we didn't have a chance to submit it in
14   advance, but this is -- she just wants to put this on
15   the record.  It's a letter from a friend of hers.  It's
16   a relative of hers named Nicole Wiggin.
17              THE COURT:  Sure.
18              MR. WINTERS:  I did provide a copy to
19   probation and the government.
20              THE COURT:  Sure, I will take it.
21              MR. WINTERS:  And I also wanted to let the
22   Court know that she is scheduled for surgery for a
23   carpal tunnel surgery on her wrist.
24              THE COURT:  When is it?
25              MR. WINTERS:  September 22nd.
```

| | |
|---|---|
| 1 | THE COURT: How long is the recovery for that? |
| 2 | MR. WINTERS: I have a letter from her doctor |
| 3 | requesting an eight-week delay post surgery for |
| 4 | recovery. |
| 5 | THE COURT: How do you feel about that, |
| 6 | counsel, I mean, if she's got a scheduled surgery and it |
| 7 | doesn't get postponed, I guess what I'm saying is I'm |
| 8 | inclined to allow her to self-surrender unless the |
| 9 | government has some reason to convince me she's likely |
| 10 | to flee, and if she has a scheduled surgery, I would |
| 11 | like to let her recover from that surgery, but what I |
| 12 | don't want to do is leave her with any misimpression |
| 13 | that if for some reason the surgery is cancelled, that |
| 14 | we're going to continue to delay. If the surgery gets |
| 15 | cancelled she's going to have to wait until she serves |
| 16 | her sentence to get the surgery. But if it's a |
| 17 | definite, she's going to have the surgery on that date, |
| 18 | some period of time to recover is probably a good thing |
| 19 | for her and it's also a good thing for the taxpayer |
| 20 | because she's responsible for any of her medical care |
| 21 | before she surrenders, but once she's in the custody of |
| 22 | the Bureau of Prisons and she develops a post-surgical |
| 23 | infection or something like that, the treatment has to |
| 24 | be provided by the government. |
| 25 | So, I think it makes sense to do that unless |

```
 1  the government has some basis to believe she's likely to
 2  flee.
 3              MR. MORSE:  The government has no reason to
 4  believe the defendant is likely to flee, and although I
 5  think eight weeks is probably a generous term for
 6  recovery.
 7              THE COURT:  It's a little long.
 8              MR. MORSE:  But we're prepared to agree to a
 9  surrender date of December 1st if that's acceptable.
10              MR. WINTERS:  It would coincide right around
11  Thanksgiving, so we requested December 1st.  I don't
12  know if they would report during Thanksgiving.
13              THE COURT:  Okay, that seems sensible to me.
14  But please, you need to understand and you need to make
15  sure your client understands we won't be extending if
16  appointments get missed or the surgery doesn't take
17  place.  You're going to have to surrender December 1st
18  no matter what happens, all right?  Do you understand
19  what I'm saying?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Okay.  All right.  I'm going to
22  give you a chance to speak in just a minute, ma'am.  Let
23  me read your letter.
24              (Pause.)
25              THE COURT:  All right, so I've had a chance to
```

1  read your letter and it seems to me that the proposed
2  sentence is acceptable.  It's less than half of the
3  sentence I gave to her co-defendant but there's a, I
4  think, my recollection is it's over 50 months that I
5  gave the --
6            MR. MORSE:  Fifty-four months, your Honor.
7            THE COURT:  So, it is a much lighter sentence
8  than I gave to her co-defendant, but I do think there
9  are factors in her background compared with her
10 co-defendant and her culpability in this offense that
11 justify the substantially lower sentence that she's
12 getting than the sentence I gave to her co-defendant.
13           All right, before I sentence you, ma'am, you
14 have an opportunity to say anything you want to say.
15 You don't have to say anything, though.  But if you want
16 to say anything, I'll be happy to hear it.  Did you want
17 to say anything?
18           THE DEFENDANT:  No, I just want to mention
19 that --
20           MR. WINTERS:  May I, your Honor?
21           THE COURT:  Yes.
22           MR. WINTERS:  She currently is prescribed
23 opiates, and she has a concern about withdrawing off of
24 those.  And I explained to her I don't think that would
25 be a justification for delaying further incarceration,

1   but that she should develop a plan with her doctor to,
2   you know, she has plenty of time, more than the normal
3   amount of time to develop a plan trying to --
4           THE COURT:  Between now and December,
5   absolutely, but I also think the, if she wants some help
6   with that, our pretrial services people will be happy to
7   facilitate a meeting with drug counselors.  There are
8   people that can help them develop a withdrawal plan.
9   There's no reason she can't get fully off of opiates
10  between now and December.  And if she has a legitimate
11  need for medication once she's incarcerated, she will
12  receive that, but she won't get opiates prescribed to
13  her while she's in prison unless there is in fact a
14  legitimate need, so, it would be very strongly in her
15  interest between now and December to in fact act
16  aggressively to wean off of any opiate medication that
17  she's taking.
18          So, I ask the probation officer to please
19  inform her supervising officer that while she's awaiting
20  sentence and we're supervising her, she's expressed a
21  concern that she may need to wean off of opiates, and if
22  you could have that officer contact her and offer to
23  assist her with facilitating a recommendation as to
24  where she can go to get some help with respect to that,
25  okay?

1      PROBATION OFFICER: I will.
2      MR. WINTERS: Your Honor, two other things
3 that she had asked me to let the court know.
4      She expressed confusion to me about some of
5 the aliases listed on the presentence report and some of
6 the items on her record which don't materially affect
7 the guideline analysis. She does have a twin sister. I
8 haven't been able to get a clear --
9      THE COURT: Well, let me deal with those two
10 issues separately. I agree with you, it doesn't affect
11 the sentence. She's getting almost the lightest
12 sentence she can get. But if her criminal record, if
13 it's wrong, might affect how the Bureau of Prisons looks
14 at her, so let's just be sure we've got the criminal
15 record down correctly here.
16     If we look at the actual convictions -- so she
17 scores out as a Criminal History Category I, so it
18 doesn't affect her guideline range in any way, but let's
19 just look at the convictions. I'm less concerned with
20 the other arrests. None of them are for -- things that
21 are likely to enhance her sentencing status, but she
22 does have several convictions that if she doesn't think
23 it's correct, we may need to want to address it.
24     So, there's a conviction for forgery in 1985
25 when she was about 22. Is she disputing that?

```
1              THE DEFENDANT:  Yes, that's my sister.
2              THE COURT:  You think that conviction is for
3   your sister?
4              THE DEFENDANT:  Yes.
5              MR. WINTERS:  I had asked her to try to go
6   through that in advance but there's some -- there is
7   some transportation issues and some distance issues --
8              THE COURT:  All right, well, what we're going
9   to do at the end of the hearing today, before you leave,
10  you're going to sit down with the probation officer who
11  compiled this record, and she has all the conviction
12  information, and if there is any dispute about it she
13  can get it and what you can do is if you can agree to
14  any amendments, she can just file a proposed amendment,
15  inform me that she's proposing to amend the report.  If
16  you disagree after this discussion, you can file a
17  motion to ask the Court to amend her presentence report,
18  and if necessary we can hold a hearing on it, but
19  there's no reason why I can't order the report to be
20  amended at any time if it turns out to be false.  So,
21  between now and December we can work that out.  But none
22  of these things will affect the sentence.  Even if she
23  had no criminal record I would be giving her the same
24  sentence that I'm giving her now.  So, that isn't a
25  problem for me.  But I don't want her to go into the BOP
```

1  with materially false information on her record because
2  that tends to stick with you and it can affect your
3  classification and how the intake officers view you.
4           So, let's have you meet with them before you
5  leave the courthouse today, ma'am, with the probation
6  officer, and you see what you can work out, okay?
7           MR. WINTERS:  I appreciate that, your Honor.
8  I'm sorry we weren't more prepared for that.
9           THE COURT:  That's all right.  We will get it
10 taken care of.
11          All right, let me read the proposed sentence.
12 Now, you've reviewed the probation terms with your
13 client?
14          MR. WINTERS:  I did, your Honor.
15          THE COURT:  She's not in disagreement about
16 any of those terms, is that right?
17          MR. WINTERS:  She's not in disagreement with
18 the terms.  I think our plea agreement does not include
19 the length of supervised release, so we would propose
20 one year which is in the guideline range.
21          THE COURT:  Okay.  And the government was
22 asking for --
23          MR. MORSE:  The government is asking for three
24 years, your Honor.
25          THE COURT:  Three years.  Let's -- I think a

1  two-year term -- one year will be insufficient, two
2  years, if she can remain free of criminal conduct for
3  two years ought to be sufficient, so I'm prepared to
4  reduce it to two years.
5          MR. WINTERS:  Thank you, your Honor.
6          THE COURT:  All right, let me read the
7  proposed sentence.
8          Pursuant to the Sentencing Reform Act of 1984
9  it is the judgment of the Court that the defendant,
10 Laura Minot, is hereby committed to the custody of the
11 Bureau of Prisons to be in prison for a term of one
12 month on Count One and 24 months on Count Fourteen, with
13 such terms to be served consecutively to Count One for a
14 total term of 25 months.
15         Upon release from imprisonment the defendant
16 shall be placed on supervised release for a term of
17 three years.  Said term consists of three years on Count
18 One and one year on Count Fourteen, both such terms to
19 run concurrently.
20         Within 72 hours of release from the custody of
21 the Bureau of Prisons the defendant shall report in
22 person to the probation office in the district to which
23 the defendant is released.
24         While on supervised release -- excuse me, I
25 meant two years, two years on Count One and one year on

```
 1   Count Fourteen, both such terms to run concurrently.
 2              While on supervised release the defendant
 3   shall not commit another federal, state or local crime,
 4   shall comply with the standard conditions that have been
 5   adopted by this Court, and shall comply with the
 6   following mandatory and proposed special conditions
 7   attached to the presentence report.
 8              The defendant shall pay a special assessment
 9   of $200 which shall be due in full immediately.
10              The Court orders restitution in the amount
11   specified to the entities identified in the presentence
12   report.  This is a joint and several obligation.  It's
13   ordered that the defendant shall make restitution except
14   that no further payment shall be required after the sum
15   of amounts actually paid by all defendants, that is she
16   and Lois Patton, has fully covered any compensable
17   injury.  Any payment that is not payment in full shall
18   be divided proportionately among the persons named.
19              The Court finds that the defendant does not
20   have the ability to pay a fine, the Court will waive the
21   fine in this case.
22              The defendant does not have the ability to pay
23   interest and the Court orders that the interest
24   requirement is waived.
25              Payments towards the total criminal monetary
```

1  penalties are ordered to begin immediately within
2  30 days of commencement of supervision.  Payments shall
3  be made in equal monthly installments of $100 during the
4  period of supervision and thereafter.  Upon commencement
5  of supervision the probation officer shall review the
6  defendant's financial circumstances and if necessary
7  recommend a revised payment schedule on any outstanding
8  balance for approval by the Court.
9           I order that the defendant self-surrender to
10 an institution designated by the Bureau of Prisons on or
11 before 2 p.m. on December 1st, 2015.  That falls during
12 a weekday, did we check that?
13          PROBATION OFFICER:  It's a Tuesday.
14          THE COURT:  Tuesday, okay, good.
15          MR. WINTERS:  Your Honor, last thing, I
16 promise.  Would the Court consider recommending Danbury
17 as the facility?
18          THE COURT:  Yes, does she have family members
19 in New England?
20          MR. WINTERS:  Yeah, her entire background is
21 in the Boston area.
22          THE COURT:  All right, I recommend she be
23 incarcerated as close as possible to family members in
24 New England which I think Danbury right now is the
25 closest women's facility, so I recommend she be

```
 1  incarcerated in Danbury.
 2            MR. WINTERS:  Thank you, your Honor.
 3            THE COURT:  Are there any objections to the
 4  proposed sentence?
 5            MR. MORSE:  No objection, your Honor.
 6            THE COURT:  I will impose the sentence as I've
 7  read it.
 8            You may have a limited right to appeal.  If
 9  you want to appeal, consult with your attorney and
10  direct him to file a notice of appeal on your behalf, or
11  if you prefer you can ask the clerk's office for help,
12  but any notice of appeal does have to be filed within
13  14 days or you lose your right to appeal.
14            Anything else we need to deal with today?
15            MR. MORSE:  Just that the government moves to
16  dismiss Counts Two through Thirteen.
17            THE COURT:  Motion is granted.  Counsel, be
18  sure you meet with the probation office with your client
19  before you leave today to try to resolve any lingering
20  disputes about any potential inaccuracies in the
21  presentence report.
22            MR. WINTERS:  Thank you very much, your Honor.
23            MR. MORSE:  Thank you.
24            THE COURT:  All right, thank you.
25            (Hearing concluded at 12:05.)
```

C E R T I F I C A T E

I, Sandra L. Bailey, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 11/24/2015

**SANDRA L. BAILEY, LCR, CM, CRR**
LICENSED COURT REPORTER, NO. 15
STATE OF NEW HAMPSHIRE